DELBERT N. COOPER AND CATHRYN C. COOPER, APPELLANTS, v. DOLORES PAAP, APPELLEE.

634 N.W.2d 266

Filed June 5, 2001. No. A-00-322.

Kenneth Cobb, of Law Office of Kenneth Cobb, P.C., for appellants.

William F. Davis for appellee.

William F. Austin, of Erickson & Sederstrom, P.C., for amicus curiae Nebraska Land Title Association.

HANNON, CARLSON, and MOORE, Judges.

HANNON, Judge.

## INTRODUCTION

Delbert N. Cooper and Cathryn C. Cooper sued Dolores Paap for negligently omitting a 1960 deed to the State of Nebraska in an abstract Paap prepared for the Coopers during a 1981 land purchase. The Coopers learned of the omitted deed after the State of Nebraska initiated condemnation proceedings in 1997 based on rights granted to it in the omitted deed, and the Coopers subsequently sued Paap in 1999. On cross-motions for summary judgment, the trial court granted summary judgment in favor of Paap, holding that the Coopers' claim was time barred. The Coopers appeal alleging, restated, that the trial court erred in granting summary judgment against them based on the statute of limitations because (1) the statute of limitations clock

should not have started running until they learned of Paap's omission in 1997 and (2) abstracters are not professionals for the purposes of Neb. Rev. Stat. § 25-222 (Reissue 1995) and therefore that section did not apply. We hold that (1) abstracters are professionals for the purposes of § 25-222 and that (2) § 25-222 bars the Coopers' claim because they failed to file within 1 year of discovery and further because even if they had filed within that timeframe, their claim was still beyond the 10-year absolute bar for professional negligence claims.

## BACKGROUND

The parties do not dispute the material facts in this case. The Coopers purchased a tract of land in Otoe County, Nebraska, on April 3, 1981. Paap, a registered abstracter in the State of Nebraska, completed the abstract on the land for the sale and attached her certificate on January 8, 1981. The abstract was then delivered to the Coopers' attorney who reviewed it and approved the sale. Subsequently, the Coopers purchased the property on April 3.

On October 14, 1997, the State of Nebraska initiated a condemnation proceeding to acquire a right-of-way for the U.S. Highway 2 project. At that time, the Coopers learned that their land had an access to the highway which was limited by a warranty deed given by the then owner to the State of Nebraska and filed in 1960. This deed restricted the highway access to a farmstead entrance for the movement of farming implements and crop equipment consistent with normal farming operations. This deed was not listed in the abstract which Paap prepared. Delbert Cooper's affidavit states that the Coopers did not become aware of this deed until the time of the condemnation proceeding, but the record does not otherwise specify how and in what manner the Coopers discovered Paap's omission. Likewise, Paap did not learn of her omission until she received a letter from the Coopers' attorney regarding the matter.

The Coopers filed the instant action against Paap on April 20, 1999. The Coopers' petition alleged that they relied on Paap's abstract in the purchase of the land and further that they could not have reasonably discovered her omission before the condemnation proceeding initiated by the State in 1997. The Coopers there-

fore sought damages in the amount of $14,117.49, which their petition alleged was their cost in removing the defect in title and restoring unlimited access to the highway from their property.

Paap answered by denying the Coopers' claim and alleging that their cause of action was time barred. Paap's amended answers alleged application of statutes of limitations for professional negligence, statutory claims, negligence claims, and a catchall provision for any other claims. The parties subsequently filed cross-motions for summary judgment. The trial court took evidence on the above facts and heard arguments by counsel on February 7, 2000.

After receiving written arguments subsequent to a hearing on the matter, the trial court issued its decision on March 10, 2000. The trial court recited the undisputed facts given above and stated that this case was appropriate for summary judgment and a decision as a matter of law. The trial court held that the Coopers' claim was time barred and therefore sustained Paap's motion for summary judgment, overruled the Coopers' motion for summary judgment, and accordingly dismissed the Coopers' cause of action. The trial court also taxed all costs of the litigation to the Coopers.

The Coopers subsequently perfected this appeal. Additionally, the Nebraska Land Title Association has filed a brief with this court as amicus curiae. The association asserts that abstracters are professionals under § 25-222.

## ASSIGNMENTS OF ERROR

The Coopers allege that the trial court erred in (1) finding that their claim was barred by the statute of limitations, (2) finding that their claim accrued at the time Paap delivered the abstract, (3) failing to hold that the statute of limitations began to run at the time the Coopers discovered Paap's omission, (4) failing to find negligent misrepresentation in Paap's certification of the abstract, and (5) failing to hold that the Coopers' claim accrued when they knew or should have known of Paap's negligent misrepresentation.

## STANDARD OF REVIEW

In *Morrison Enters. v. Aetna Cas. & Surety Co.*, 260 Neb. 634, 639, 619 N.W.2d 432, 436 (2000), the court stated:

Summary judgment is proper when the pleadings, depositions, admissions, stipulations, and affidavits in the record disclose that there is no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. . . . In reviewing a summary judgment, an appellate court views the evidence in a light most favorable to the party against whom the judgment is granted and gives such party the benefit of all reasonable inferences deducible from the evidence.

(Citations omitted.)

 In reviewing questions of law, an appellate court is obligated to reach a conclusion independent of determinations reached by the lower courts. *Kissinger v. Genetic Eval. Ctr.*, 260 Neb. 431, 618 N.W.2d 429 (2000). The question of which statute of limitations applies is a question of law that an appellate court must decide independently of the conclusion reached by the trial court. *Reinke Mfg. Co. v. Hayes*, 256 Neb. 442, 590 N.W.2d 380 (1999).

## ANALYSIS

The parties cite various statutes of limitations which potentially have applicability to this case depending upon their alternative theories as to the classification of abstracters and of this type of claim against an abstracter. At the forefront of the parties' dispute is whether abstracters are professionals for the purposes of applying § 25-222. Section 25-222 states:

Any action to recover damages based on alleged professional negligence or upon alleged breach of warranty in rendering or failure to render professional services shall be commenced within two years next after the alleged act or omission in rendering or failure to render professional services providing the basis for such action; *Provided*, if the cause of action is not discovered and could not be reasonably discovered within such two-year period, then the action may be commenced within one year from the date of such discovery or from the date of discovery of facts which would reasonably lead to such discovery, whichever is earlier; *and provided further*, that in no event may any

action be commenced to recover damages for professional negligence or breach of warranty in rendering or failure to render professional services more than ten years after the date of rendering or failure to render such professional service which provides the basis for the cause of action.

Under § 25-222, a plaintiff must bring his or her cause of action for professional negligence within 2 years of the negligent act or omission unless the plaintiff did not and reasonably could not have discovered the negligent act until after that time, in which case, the plaintiff must bring his or her claim within 1 year of reasonable discovery. However, § 25-222 bars all claims for professional negligence brought more than 10 years after the service is rendered.

" '[P]rofessional misconduct or any unreasonable lack of skill or fidelity in the performance of professional or fiduciary duties is 'malpractice' and comes within the professional or malpractice statute of limitations.' " *Schendt v. Dewey*, 246 Neb. 573, 581, 520 N.W.2d 541, 548 (1994). Therefore, we must first determine whether abstracters are professionals for the purposes of this section. "A professional act or service is one arising out of a vocation, calling, occupation, or employment involving specialized knowledge, labor, or skill, and the labor or skill involved is predominantly mental or intellectual, rather than physical or manual." *Witherspoon v. Sides Constr. Co.*, 219 Neb. 117, 125, 362 N.W.2d 35, 42 (1985). The court in *Witherspoon* continued by describing that in addition to lawyers and doctors, it had previously applied § 25-222 to accountants, medical technicians, and retirement advisers. Without further discussion, the court in *Witherspoon* stated that § 25-222 also applied to architects.

In *Tylle v. Zoucha*, 226 Neb. 476, 480, 412 N.W.2d 438, 440 (1987), the Nebraska Supreme Court voiced its dissatisfaction with the definition in *Witherspoon* and in the use of the Nebraska Professional Corporation Act to define professional for the purposes of § 25-222 and further stated that "a profession is far more than the mere possession of a license to ply one's trade." In addressing whether real estate brokers were professionals, the court in *Tylle* found a better definition of profession in the following language:

"[A] calling requiring specialized knowledge and often long and intensive preparation including instruction in skills and methods as well as in the scientific, historical, or scholarly principles underlying such skills and methods, maintaining by force of organization or concerted opinion high standards of achievement and conduct, and committing its members to continued study and to a kind of work which has for its prime purpose the rendering of a public service . . . ."

226 Neb. at 480, 412 N.W.2d at 440. This definition stressed the long and intensive program of preparation traditionally associated with professions and did not make a distinction between manual and intellectual labor or rely solely on the mere possession of a license. Citing a majority of other jurisdictions which declined to categorize real estate brokers as professionals for various reasons, and referencing the new definition of a profession in Nebraska, *Tylle* held that real estate brokers were not professionals for the purposes of § 25-222.

In *Georgetowne Ltd. Part. v. Geotechnical Servs.*, 230 Neb. 22, 430 N.W.2d 34 (1988), the Nebraska Supreme Court reiterated the above definition of profession from *Tylle*. Based on that definition, the court in *Georgetowne Ltd. Part.* held that an engineering firm clearly supplied professional services and therefore applied § 25-222.

However, the Nebraska Supreme Court subsequently reused its definition from *Witherspoon* in *Board of Regents v. Wilscam Mullins Birge*, 230 Neb. 675, 433 N.W.2d 478 (1988) (holding that architects were professionals); *Olsen v. Richards*, 232 Neb. 298, 440 N.W.2d 463 (1989) (holding that § 25-222 applied to all acts of negligence alleged against physician); and *St. Paul Fire & Marine Ins. Co. v. Touche Ross & Co.*, 244 Neb. 408, 507 N.W.2d 275 (1993) (applying professional negligence to accountants by citing to authority predating *Tylle* decision). Quoting the definition originally given in *Georgetowne Ltd. Part.* and repeated in *Lawyers Title Ins. Corp. v. Hoffman*, 245 Neb. 507, 513 N.W.2d 521 (1994), *Maloley v. Shearson, Lehman, Hutton, Inc.*, 246 Neb. 701, 523 N.W.2d 27 (1994), applied § 25-222 to investment counselors by reasoning that the case before it was indistinguishable from *Educational Service*

*Unit No. 3 v. Mammel, O., S., H. & S, Inc.*, 192 Neb. 431, 222 N.W.2d 125 (1974) (holding that § 25-222 applied to negligently planning retirement benefit). *Motor Club Ins. Assn. v. Fillman*, 5 Neb. App. 931, 568 N.W.2d 259 (1997), quoted the newer definition when expressing doubt as to the application of § 25-222 to insurance agents. While the court in *Motor Club Ins. Assn.* stated that insurance agents did not appear to be professionals under the *Tylle* and *Georgetowne Ltd. Part.* definition, it did not decide the issue because the claim before it was time barred under potentially applicable statutes of limitations.

In *Jorgensen v. State Nat. Bank & Trust*, 255 Neb. 241, 583 N.W.2d 331 (1998), the Nebraska Supreme Court revisited the definition of a profession for the purposes of § 25-222 because after providing its revised definition in *Tylle v. Zoucha*, 226 Neb. 476, 412 N.W.2d 438 (1987), it had subsequently affirmed its holdings regarding architects, engineers, accountants, and retirement planners based on the old definition of professionals and without further analysis. The court in *Jorgensen* referred to its holding in *Georgetowne Ltd. Part.* and stated that it indicated that a college degree embodied the characteristics of a " 'long and intensive program of preparation,' " and that "licensing, although not dispositive, strongly indicates that an occupation is a profession." 255 Neb. at 246, 583 N.W.2d at 335. *Jorgensen* continued:

> Applying the *Tylle* definition to the instant case, we can conclude only that Bank's employees were not professionals and did not render professional services. Neither [bank employee] had any specialized knowledge requiring long and intensive preparation. According to [one employee], Bank's employees were expected to do nothing more than fill out forms. Bank's employees did not hold licenses and did not regularly supplement their educations, such as they were, nor were Bank's employees subject to an ethical code enforced by a disciplinary system. In the absence of such characteristics, we cannot say that they maintained by force of organization high standards of achievement and conduct or committed themselves to continued study. Finally, there is no evidence that the kind of work performed by Bank's employees in the instant case had for its

prime purpose the rendering of a public service. Based on the evidence adduced, we conclude that Bank's employees, even if characterized as "retirement planners," were not professionals.

255 Neb. at 246-47, 583 N.W.2d at 335. *Jorgensen* represents the Nebraska Supreme Court's most recent holding on defining professions under § 25-222.

Based on the definition the court in *Jorgensen* affirmed and the factors it articulated in reaching its conclusion with respect to bank employees, we find and hold that abstracters are professionals for the purposes of § 25-222. Neb. Rev. Stat. § 76-535 et seq. (Reissue 1996 & Cum. Supp. 2000) is the Abstracters Act and governs the "[b]usiness of abstracting" as defined in § 76-537(3). The act's purpose is "to safeguard the welfare and property of citizens of this state and to insure that abstracters *serving the public* meet minimum standards of proficiency and competency." (Emphasis supplied.) § 76-536. The act provides that anyone engaged in the business of abstracting must be licensed as provided in the act. § 76-538. The act further establishes an Abstracters Board of Examiners to carry out and enforce its provisions. § 76-540. The board may revoke or suspend an abstracter's license or censure an abstracter or issue a letter of reprimand for violations of the act including unfair practices, the conviction of a felony, habitual carelessness, or fraudulent practices.

Further, applicants must prove to the board's satisfaction that the applicant has at least 1 year of verified land title-related experience, see § 76-542, as well as pass a written examination to determine the applicant's proficiency, see § 76-543. Once registered and licensed, an abstracter must "complete and certify to the board that he or she has successfully completed three hours of board-approved professional development credits." § 76-544. As noted by the Nebraska Land Title Association, the Legislature specifically changed this requirement in 1985 by deleting reference to " 'continuing education programs' " and inserting instead the phrase " 'professional development credits.' " Brief for amicus curiae at 6.

Other authorities have also recognized an abstracter's knowledge, care, and skill:

From its nature, the business of abstracting titles requires special knowledge and qualifications, and while, as discussed [in a later section], it is not a function of an abstracter, as such, to give an opinion as to the legal effect of the facts or instruments noted, he [or she] must, in order properly to perform his [or her] duties, have an understanding of the law relating to conveyances, descents, devises, and other matters affecting the title to real property, and be able to determine what constitutes a lien or encumbrance thereon. Moreover, an abstracter is bound to use sufficient diligence to discover and show on his [or her] abstract all relevant instruments and facts properly made a matter of record.

. . . .

Similarly, he [or she] must read or examine the whole of each instrument, and take care to discover material matter contained anywhere therein; and it is no excuse for omitting a material matter that it was contained or set forth in a part of the instrument other than that in which it would normally be expected to be found. He [or she] must examine the actual records, and is not justified in relying upon marginal notes or references, or upon the index.

1 C.J.S. Abstracts of Title § 9 at 371-72 (1985). Corpus Juris Secundum adds, in pertinent part:

There is a rigorous duty imposed upon an abstracter . . . to conduct a proper and painstaking search and examination of the public records, and to set forth in his [or her] abstract all the material facts of record which relate to, or may affect, the title under investigation. . . .

. . . .

. . . [I]f in his [or her] search or examination of the records, he [or she] is put on notice of anything outside thereof which may affect the title, he [or she] should either investigate the same, or call attention thereto in the abstract so that interested persons may make further investigations.

*Id.*, § 10 at 373.

Based on the above authority, we believe abstracters meet the factors annunciated in *Jorgensen v. State Nat. Bank & Trust*, 255 Neb. 241, 583 N.W.2d 331 (1998). While their education is not

as long as some of the other professions, they overwhelmingly satisfy the other factors used to judge professionals. Abstracters provide a service to the public upon which the public relies, and those duties require specialized knowledge and a license to provide such services, which *Jorgensen* stated was a strong indicator of a profession. The general public would most likely be unable to perform the same function for themselves. Also, abstracters must have prior related experience and pass a written proficiency examination given by a governing board which also has the power to discipline abstracters for violations of their duties or for otherwise being unfit to perform the same. Further, and highly suggestive of the Legislature's view of the question before us, abstracters must complete a minimum number of continuing education credits which the Legislature specifically titled "professional development."

We also note that while the Nebraska Supreme Court has not dealt with this issue directly, it has given indications that it considers abstracters professionals. In *Heyd v. Chicago Title Ins. Co.*, 218 Neb. 296, 354 N.W.2d 154 (1984), the Nebraska Supreme Court cited a California case when discussing other jurisdictions' recognition of a title insurance company's duty to use due care when inspecting public records and preparing title reports.

> The duty imposed upon an abstractor of title is a rigorous one: "An abstractor of title is hired because of *his* [*or her*] *professional skill*, and when searching the public records on behalf of a client he [or she] must use the degree of care commensurate with that professional skill . . . the abstractor must report all matters which could affect his [or her] client's interests and which are readily discoverable from those public records ordinarily examined when a reasonably diligent title search is made."

(Emphasis supplied.) *Id.* at 302-03, 354 N.W.2d at 158.

In *Tess v. Lawyers Title Ins. Corp.*, 251 Neb. 501, 557 N.W.2d 696 (1997), the Nebraska Supreme Court required title insurance companies to use due care in providing title reports. The court specifically held that "title insurance companies and their agents are required to exercise the degree of skill and knowledge normally possessed by members of the *profession* in good standing in the locality concerning preliminary title information

which is transmitted to their customers." (Emphasis supplied.) *Id.* at 513, 557 N.W.2d at 704-05. Finally, in *Flamme v. Wolf Ins. Agency*, 239 Neb. 465, 476 N.W.2d 802 (1991), the concurring opinion quoted an Iowa case which recognized the tort of negligent misrepresentation by accountants and further recognized that " 'the same rule may be applicable in other recognized professions, such as abstracters and attorneys.' " *Id.* at 477, 476 N.W.2d at 810 (Shanahan, J., concurring).

With respect to cases beyond this jurisdiction, we found only one which has addressed this issue, that is, whether an abstracter is a professional for the purposes of applying statute of limitations rules to professionals. In *Chapman v. Alexander*, 307 Ark. 87, 817 S.W.2d 425 (1991), the Arkansas Supreme Court specifically enumerated abstracters in its list of professionals which were affected by its decision whether to apply the discovery rule to professional malpractice cases. We find no authority, and the Coopers have cited us to none, which contradicts our holding here and states that abstracters are not professionals for the purposes of a statute of limitations. Also, several jurisdictions have included abstracters in the category of professionals when ruling on other issues. See, e.g., *Bernard v. Char*, 79 Haw. 371, 903 P.2d 676 (Haw. App. 1995) (citing W. Page Keeton et al., Prosser and Keeton on the Law of Torts § 32 (5th ed. 1984), for proposition that principles developed in medical malpractice cases applied to cases involving other professions which included abstracters of title); *Eby v. York-Division, Borg-Warner*, 455 N.E.2d 623 (Ind. App. 1983) (including abstracters in group of professionals whose actual calling requires giving of opinions).

The Coopers assert that the Nebraska Supreme Court's holding in *Tylle v. Zoucha*, 226 Neb. 476, 412 N.W.2d 438 (1987), which found that real estate brokers were not professionals for the purposes of § 25-222, requires a similar finding in this case because real estate brokers share many of the statutory characteristics described above for abstracters. We disagree. The analysis in *Jorgensen v. State Nat. Bank & Trust*, 255 Neb. 241, 583 N.W.2d 331 (1998), came after the holding in *Tylle* and was specifically written to remedy the disparity caused by *Tylle* and other cases regarding what constitutes a profession under § 25-222. Further, *Tylle* noted that several other jurisdictions

concluded real estate brokers were not professionals, whereas the authority we have found with respect to abstracters is just the opposite. Also, according to *Tylle*, real estate agencies were akin to other business agencies such as commission sales merchants of personal property which have not been considered professionals under popular usage or by law. Abstracters however are not so akin to such merchants. Still further, *Tylle* found the licensure requirement to be unpersuasive and unacceptable, a point which *Jorgensen* specifically disagreed with when it held that such a requirement is, while not dispositive, strongly indicative of a profession.

Given that we find abstracters are professionals for the purposes of § 25-222, we turn now to that section's application to this case. The Coopers' claim fails this section twofold. First, they failed to file their claim within 1 year after they discovered Paap's omission, assuming but not deciding that reasonable discovery did not occur before that time. Second, even if they had filed their claim within 1 year of the condemnation proceeding, their claim was clearly beyond the absolute 10-year bar on professional negligence suits. Accordingly, we find that the trial court's order sustaining Paap's motion for summary judgment based on § 25-222 and denying the Coopers' cross-motion was proper. Because of our holding on this issue, we do not address the Coopers' remaining arguments regarding when the statute of limitations clock began to run.

## CONCLUSION

For the reasons stated, we hold that abstracters are professionals for the purposes of § 25-222 and that therefore the trial court properly applied § 25-222 and correctly found that the Coopers' claim was time barred.

AFFIRMED.